IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIB - THE INDEPENDENT BANKERSBANK, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:13-CV-3913-D |
| | § | |
| CANYON COMMUNITY BANK, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

    In this removed action alleging claims for breach of contract, negligent misrepresentation, and unjust enrichment, defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), or for a more definite statement under Rule 12(e).  For the following reasons, the court grants the motion to dismiss and also grants plaintiff leave to replead.[1]

I

    In 2002 plaintiff TIB - The Independent BankersBank ("TIB") and defendant Canyon Community Bank ("CCB") entered into a Mortgage Loan Program Agreement ("2002 Agreement").[2]  The 2002 Agreement was superseded by a Correspondent Bank Mortgage

---

[1]Because the court is granting the motion to dismiss, it need not consider the alternative motion for a more definite statement.

[2]In deciding defendant's Rule 12(b)(6) motion, the court construes plaintiff's state court petition in the light most favorable to plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiff's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Loan Agreement entered into in 2009 ("2009 Agreement").  Under the 2002 and 2009

Agreements (collectively, the "Agreement," unless it is necessary to distinguish between the

two), TIB agreed to purchase from CCB various conventional, FHA, VA, and/or jumbo

residential mortgage loans, including the servicing rights of these loans.  CCB agreed to

submit completed loan packages to TIB to assist it in marketing the loans to the secondary

market.  CCB also agreed that it would "originate and process all Loans in accordance with

customary and prudent lending practices of financial institutions and in full compliance with

the requirements of" the Federal National Mortgage Association ("Fannie Mae") and the

Federal Home Loan Mortgage Association ("Freddie Mac").  Pet. ¶ 6.  TIB alleges that "[a]t

all times, the parties knew and intended for TIB to sell the loans to third party investors."

*Id.* ¶ 5.

CCB warranted in the Agreement that, as of the time any loan package was submitted

to TIB, each loan conformed to the specifications "set forth by TIB and in applicable investor

and insurer regulations, rules, guides and handbooks for mortgage loans eligible for sale to,

insurance by or pooling to back securities issued or guaranteed by, said investors and

insurers."[3] *Id.* ¶ 9.  CCB also agreed to indemnify TIB for any losses incurred as a result of

---

[3]CCB further warranted:

> [t]he Loan file contains each of the documents and instruments
> required by applicable law or investor or insurer requirements
> and/or specified to be included therein duly executed and in due
> and proper form and each such document is genuine and in form
> acceptable to the applicable investors and insurers and the
> information contained therein is true, accurate and complete.

any breach of warranty by CCB or of "[a]ny acts, errors or omissions of [CCB] . . . with respect to the origination of any Loan . . . prior to the date of sale to TIB or thereafter in connection with the performance of any of [CCB's] obligations." *Id.* ¶ 10 (quoting Ex. A at 6-7).

On January 21, 2005 TIB purchased a loan ("Loan B")[4] from CCB and, pursuant to the Agreement, sold the loan to Fannie Mae. On January 17, 2008 TIB purchased a loan ("Loan A")[5] from CCB and, pursuant to the Agreement, sold the loan to Freddie Mac. TIB alleges that Loans A and B did not fully comply with Freddie Mac and Fannie Mae guidelines, and, as a result, it was forced to indemnify Freddie Mac and Fannie Mae for their respective losses on the loans.

On August 7, 2013 TIB demanded indemnification from CCB under the Agreement. When CCB failed and refused, TIB sued CCB in state court on August 27, 2013, alleging claims for breach of contract, negligent misrepresentation, and unjust enrichment. CCB removed the case to this court and now seeks to dismiss TIB's claims under Rule 12(b)(6),

_____

> The Loan was originated in accordance with the applicable investor and insurer underwriting standards in effect at the time of origination.

Pet. ¶ 9 (quoting Ex. A at 3-5).

[4]Loan B is secured by property located on East Magee Road, Tucson, Arizona.

[5]Loan A is secured by property located on West Crimson Ridge Drive, Tucson, Arizona.

- 3 -

or for a more definite statement under Rule 12(e).[6]

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted). To survive CCB's motion to dismiss under Rule 12(b)(6), TIB must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

---

[6]On December 27, 2013 CCB filed a notice advising the court that a case cited in both parties' briefing has been reversed. *See ACE Sec. Corp. v. DB Structured Prods., Inc.*, 965 N.Y.S.2d 844 (N.Y. Sup. Ct. 2013), *rev'd*, ___ N.Y.S.2d ___, 2013 WL 6670379 (N.Y. App. Div. Dec. 19, 2013) (per curiam). The court has not relied on this case in reaching this decision.

pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).

## III

The court turns first to CCB's motion to dismiss TIB's breach of contract claim based on the statute of limitations.

## A

"'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'"  *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint.").  "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint."  *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002)

(Fitzwater, J.). Furthermore, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)) (alteration in original).

B

In its state court petition, TIB alleges that CCB breached the Agreement's representations and warranties with respect to Loans A and B and that TIB is entitled to indemnification as a result. TIB asserts that, although CCB represented and warranted that Loan A was originated in accordance with Freddie Mac underwriting standards in effect at the time of origination and agreed to originate and process all loans in full compliance with Freddie Mac requirements, Loan A failed to conform to Freddie Mac guidelines because the borrower's income was insufficient to support all of his financial obligations and his true debt-to-income ratio was considered an unacceptable risk to Freddie Mac. TIB maintains that, because CCB did not process or originate Loan A in accordance with Freddie Mac requirements and underwriting standards, CCB breached the Agreement's representations and warranties with respect to Loan A, and TIB is entitled to indemnification. As to Loan B, TIB alleges that, despite CCB's representations to the contrary, Loan B did not comply with Fannie Mae guidelines and was not processed in accordance with Fannie Mae underwriting standards because certain information related to the appraisal was not provided in the loan file (specifically, certain comparables were missing from the appraisal grid page).

Thus TIB maintains that CCB breached the Agreement's representations and warranties with respect to Loan B, and that it is entitled to indemnification on this loan as well.

CCB moves to dismiss TIB's breach of contract claim on the grounds that it is barred by limitations. CCB posits that TIB alleges that CCB breached representations and warranties that were made at or before the time TIB purchased the loans from CCB, and that, on the face of the pleadings, the alleged breach of contract for the 2005 loan (Loan B) occurred in or before January 2005, and the alleged breach of contract for the 2008 loan (Loan A) occurred in or before January 2008. Relying on the four-year statute of limitations for breach of contract claims, CCB maintains that TIB's breach of contract claim is time-barred.[7]

TIB responds that its breach of contract claim arises from CCB's breach of its *duty to indemnify* TIB for losses incurred as a result of CCB's warranty breaches, and because the indemnity provisions in the Agreements are "damages indemnity agreements" under Texas law, TIB's claim for breach of these provisions did not accrue until TIB was forced to reimburse Fannie Mae and Freddie Mac for losses associated with Loans A and B. TIB maintains, that because it did not incur losses on Loans A and B until 2013, its breach of

---

[7]The 2002 Agreement contains the following purported waiver of any applicable statute of limitations: "The indemnity provided in this section shall remain in full force and effect regardless of any . . . applicable statute of limitations which is expressly waived." Pet. Ex. B at 6. CCB argues that this waiver is void as against public policy because of its broad and indefinite scope. TIB responds that, because its breach of contract is timely, the court need not address waiver. Given the basis for the court's decision, it declines to reach this argument.

contract claims are timely.

CCB replies that the Agreement was not intended to act as mortgage or loan insurance and that TIB's recharacterization of the Agreements as "an indemnity insurance agreement" would allow the litigation of stale, decades-old loan closings and would eviscerate the applicability of the statute of limitations to mortgage loan purchases.  D. Reply 3.  It posits that the indemnification and repurchase provisions of the Agreement provide remedies, not independent causes of action, for breaches of representations and warranties.  CCB quotes extensively from *Nomura Asset Acceptance Corp. v. Nomura Credit & Capital, Inc.*, 2013 WL 2072817, at *8 (N.Y. Sup. Ct. May 10, 2013) (unpublished table decision), in which a New York supreme court dismissed as time-barred a complaint alleging breach of contract arising out of the defendant's failure to repurchase allegedly defective loans from a pool of home mortgage loans sold to the plaintiff.  *Id.* at *9.  The *Nomura* court reasoned that the repurchase obligation was merely a remedy, not "a duty independent of the Mortgage Representation breach of contract claims."  *Id.* at *8.  It concluded that "[t]he statute of limitations runs from the time of breach of the Mortgage Representations, not from the time plaintiff elected to make demands for repurchase."  *Id.*  CCB argues that the court should follow the approach taken in *Nomura*, contending that it is "compelling and is consistent with the Texas legal-injury rule standards."  D. Reply 6.

In a surreply, TIB argues that CCB committed an independent breach of the Agreement each time it failed to abide by and fulfill its obligation to indemnify TIB.  It argues that *Nomura* is inapposite because, in that case, repurchase was the sole remedy

available to the plaintiff. It therefore maintains that, because TIB seeks indemnity, not repurchase, *Nomura* has no bearing on CCB's motion to dismiss. TIB posits that CCB committed an independent breach of the Agreement each time it failed to abide by and fulfill its obligation to indemnify TIB, and that it would "def[y] common sense" to require TIB to bring an indemnity suit before it had paid, or had incurred any obligation to pay, a third-party investor. P. Surreply 8. Finally, TIB contends that the Agreement is not the equivalent of a mortgage insurance policy because CCB does not bear the risk of loss on *all* loans that default; it only bears the risk of loss on loans on which borrowers default due to false representations and warranties made by CCB.

### C

Under Texas law, a cause of action for contractual indemnification[8] accrues either at the time a judgment is rendered or at the time a judgment is paid, depending on the language of the contract.[9] *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 388 (5th Cir. 2007); *see*

---

[8]Texas also recognizes causes of action for common law indemnity and statutory indemnity. Common law indemnity clearly does not apply because "common law indemnity survives only in products liability actions to protect an innocent retailer in the chain of distribution and in negligence actions to protect a defendant whose liability is purely vicarious in nature." *Garza v. Ford Motor Co.*, ___ S.W.3d ___, 2013 WL 5925849, at *3 (Tex. App. Nov. 6, 2013, no pet. h.) (citing *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 833 (Tex. App. 2011, no pet)). And because TIB cites no statutory provisions in support of its breach of contract claim, the court assumes that TIB likewise does not intend to allege a statutory indemnity claim.

[9]Whether the cause of action accrues at the time a judgment is rendered or at the time the judgment is paid depends on the language of the indemnity clause. *See Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999) ("To determine the correct accrual date of an indemnity claim we look to the contract's indemnity provision."). "There

*also Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 134 (Tex. 2010) ("[A] claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain."). "'As such, an action for indemnification or contribution does not accrue for limitations purposes until a plaintiff recovers damages or settles its suit against a defendant.'" *Am. Star Energy & Minerals Corp. v. Stowers*, 405 S.W.3d 905, 915 (Tex. App. 2013, no pet.) (citation omitted).  TIB maintains that it was forced to indemnify Freddie Mac and Fannie Mae in 2013.  It is therefore unlikely that its purported indemnification claim accrued prior to 2013.

Although the court concludes that TIB's claim for contractual indemnification probably did not accrue before 2013, this does not mean that TIB's petition is sufficient to avoid CCB's limitations defense.  TIB argues in its *brief* that its "claims arise from CCB's *breach of its duty to indemnify* TIB for losses incurred as a result of CCB's warranty breaches." P. Resp. 2 (emphasis omitted).  But TIB's *petition* does not allege a breach of the indemnification provisions of either the 2002 or the 2009 Agreement.  Under the heading "Breach of contract (breach of the representations and warranties in the contract)," TIB pleads that "CCB breached the Agreement's representations and warranties with respect to

_____

are two types of indemnity agreements, those that indemnify against liabilities and those that indemnify against damages." *Id.* (citations omitted).  Broad language that "holds the indemnitee 'harmless' against 'all claims' and 'liabilities' evidences an agreement to indemnify against liability." *Id.* "Damages indemnity agreements, on the other hand, are not as broad, and the indemnitee's right to sue does not accrue 'until the indemnitee has suffered damage or injury by being compelled to pay the judgment or debt.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 389 (5th Cir. 2007) (quoting *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App. 1993, writ denied) (emphasis omitted)).

Loan A [and Loan B].  Based on CCB's breach, TIB is entitled to indemnification for Loan A [and Loan B]."  Pet. ¶ 18.  TIB also alleges that CCB breached its representation and warranty that Loan A would conform to Freddie Mac guidelines and was originated in accordance with Freddie Mac underwriting standards in effect at the time of the origination, and that Loan B conformed to Fannie Mae guidelines and was originated in accordance with Fannie Mae underwriting standards in effect at the time of origination.  In other words, TIB alleges that, in connection with Loans A and B, CCB "breached" the "representations and warranties" in the 2002 and 2009 Agreements, and it seeks indemnity as a remedy for the breach of these "representations and warranties."  TIB does not plead a contractual indemnification claim in its petition (i.e., a claim that would not be time-barred on its face).

In its surreply, TIB requests that if the court is inclined to grant CCB's motion to dismiss, it be granted leave to amend to replead its allegations against CCB.  Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will permit TIB to amend its complaint to plead a claim for contractual indemnification.  *See In re Am. Airlines, Inc. Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

IV

The court next considers CCB's motion to dismiss TIB's negligent misrepresentation and unjust enrichment claims.

A

CCB argues that TIB's unjust enrichment and negligent misrepresentation claims are time-barred because the conduct at issue concerning these claims must have occurred at or before the purchase of the loans in 2005 and 2008, meaning that the two-year statute of limitations applicable to claims for both negligent misrepresentation and unjust enrichment would have expired before TIB filed suit. CCB also maintains that the economic loss doctrine precludes the claims. In support of its alternative motion for a more definite statement—but not in its motion to dismiss—CCB contends that "Plaintiff's allegations provide virtually no information to support the unjust enrichment and negligent misrepresentation causes of action." D. Br. 9.

B

Although CCB challenges the sufficiency of TIB's claims for unjust enrichment and negligent misrepresentation in its motion for a more definite statement rather than in its motion to dismiss, the court can raise this ground for dismissal *sua sponte*, if necessary, because it is also allowing TIB to replead. *See, e.g.*, *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733-34 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and

- 12 -

concluding that procedure was fair because court was granting leave to replead).

Under Texas law, a claim for negligent misrepresentation consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp.2d 747, 762 (N.D. Tex. 2012) (Lynn, J.) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)). In support of its negligent misrepresentation claim, TIB alleges:

> CCB, in the course of its business as delineated above, made representations to TIB regarding the Loans, and in doing so, supplied false information for the guidance of TIB in its business. CCB did not exercise reasonable care or competence in obtaining or communicating the information, and TIB suffered pecuniary loss by justifiably relying on the representations.

Pet. ¶ 26. TIB's allegations track the elements of a negligent misrepresentation cause of action but fail to plausibly allege any facts in support of such a claim. *See Iqbal*, 556 U.S. at 678 ("'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). The conclusory allegations are insufficient to state a plausible claim for relief. Accordingly, the court dismisses this claim.

TIB's unjust enrichment claim suffers from the same lack of detail. TIB alleges that "CCB holds money that belongs to TIB in equity and good conscience. TIB pleads this cause

- 13 -

of action in order to prevent the unjust enrichment of CCB." Pet. ¶ 23. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted). TIB must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The allegations in support of TIB's unjust enrichment claim contain no facts from which the court can plausibly infer that TIB is entitled to relief under a theory of unjust enrichment.

V

TIB filed this case in state court, under the pleading standards that govern in that forum. It has requested, and should be given, an opportunity to replead under the federal pleading standards. *See, e.g.*, *Hoffman v. L&M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex. 2011) (Fitzwater, C.J.) (granting similar relief in removed case). Accordingly, the court grants TIB 30 days from the date this memorandum opinion and order is filed to file an amended complaint.

\*   \*   \*

For the reasons explained, CCB's motion to dismiss is granted, and TIB is granted leave to replead.

**SO ORDERED.**

January 15, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 14 -